1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

NATIONAL SURETY COMPANY, et al.,

11

Plaintiffs,

12

v.

13

CADET MANUFACTURING COMPANY, a
Washington corporation,

14

Defendant.

CASE NO. C01-1184C

ORDER

15

16    I.     INTRODUCTION

17          This matter has come before the Court on the United States Court of Appeals for the Ninth

18    Circuit's remand order instructing this Court to determine a reasonable attorneys' fee award. *Nat'l*

19    *Surety Co. v. Cadet Mfg. Co.*, No. 03-36004 at 5 (9th Cir. filed May 20, 2005).  This Court directed the

20    parties to submit a new round of briefing on the issue.  The briefing is now complete.

21          Having reviewed the parties's papers, the Court has determined that no oral argument shall be

22    necessary.  For the reasons that follow, the Court hereby finds and rules as follows.

23    II.    BACKGROUND

24          This action is a consolidated product liability lawsuit arising out of a November 21, 1999 fire that

25    occurred at the Northup Center in Bellevue, Washington, owned by John and Dawn Lashley ("the

26    ORDER – 1

Lashleys"). Plaintiff National Surety Company ("National Surety") insured the Lashleys' Northup Center property and sued Defendant Cadet on behalf of the Lashleys in a subrogation action filed with this Court on July 31, 2001 (Dkt. No. 1). National Surety is an Illinois corporation and Cadet is a Washington company; federal jurisdiction was premised upon diversity of citizenship, 28 U.S.C. § 1332. On September 26, 2001, Cadet answered the complaint and brought a third-party action against Design Perfect Catering, Inc. ("Design Perfect") and Thermo-Disc., Inc. (Dkt. No. 8). Cadet later voluntarily dismissed its complaints against both third-party defendants (Dkt. Nos. 9, 41). On January 11, 2002, Design Perfect filed a counterclaim against Cadet, and a fourth-party complaint against the Lashleys (Dkt. No. 18).

Plaintiffs' claims against Cadet originally included claims based on 1) Washington's Product Liability Act, 2) negligence, 3) indemnity, 4) breach of the implied warranty of merchantability, 5) breach of the implied warranty of fitness for a particular purpose, 6) strict liability in tort and 7) Washington's Consumer Protection Act ("CPA").

On August 26, 2003, the Clerk entered judgment in favor of CNA, Farmers and Design Perfect against Cadet pursuant to Cadet's offer of judgment made in accordance with Rule 68 of the Federal Rules of Civil Procedure. In relevant part, Cadet's offer stated "Notice is hereby given that defendant Cadet Manufacturing Company ("Cadet"), in accordance with FRCP 68, offers to allow [Plaintiff] to take judgment against Cadet in this action in the sum of [sum]." (*See, e.g.*, Def.'s Offer J. to Farmers, Dkt. No. 362.)

On November 14, 2003, the Court denied Plaintiffs' request for attorneys' fees, finding that Plaintiffs were not properly considered "prevailing parties" for the purposes of a fees award. (*See* Nov. 14, 2003 Order at 6, Dkt. No. 395.) Plaintiffs subsequently appealed this order to the Ninth Circuit Court of Appeals and obtained an appellate ruling in their favor. The Ninth Circuit ruled that "[b]ecause the district court entered judgment in favor of appellants pursuant to the Rule 68 offers, they 'prevailed' for purposes of the CPA and fees were 'properly' awardable." *Nat'l Surety Co. v. Cadet Mfg. Co.*, No.

ORDER – 2

1    03-36004 at 5.  The appellate court then remanded the matter back to this Court for "determination of a

2    reasonable fee award."

3    III.    ANALYSIS

4           As a preliminary matter, the Court GRANTS Cadet's motion for leave to file an overlength brief

5    (Dkt. No. 426), even though this motion was improperly filed alongside Cadet's response, *see* Local Rule

6    CR 7(f)(1).  The Court also notes that much of Cadet's brief recited facts appearing to be relevant to the

7    question of whether fees should be awarded.  This Court is prohibited from reassessing this issue.

8           The Supreme Court long ago emphasized that when acting under an appellate court's
             mandate, an inferior court is "bound by the decree as the law of the case; and must carry it
9            into execution, according to the mandate.  That court cannot vary it, or examine it for any
             other purpose than execution."
10
11   *Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999) (quoting *In re*

12   *Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).  Here, the mandate issued to this Court does not

13   allow the Court to revisit the issue of whether fees are awardable.[1]  However, to the extent that the facts

     presented by Cadet are relevant to the analysis of the *amount* of fees awardable, they will be considered.
14
          *A.    Methodology*
15
            The lodestar approach is to be used to determine reasonable attorney fees under Washington
16
     statutes.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Wash. State Physicians Ins.*
17
     *Exch. v. Fisons Corp.*, 858 P.2d 1054 (1993).  The lodestar amount is calculated by multiplying the
18
     number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Hensley*, 461 U.S. at
19
     435.
20
            In addition to the basic lodestar approach, the Ninth Circuit requires courts to support their
21

22          ───────────────────────

             [1]This includes Cadet's argument that CPA-related costs and fees are not awardable because of the
23   Plaintiffs' stipulation in bankruptcy court "waiv[ing] the right to seek to collect any uninsured portion of
     their alleged claims, if any, as against the reorganized debtor and/or its assets other than the potential
24   Royal Surplus Lines Insurance Proceeds and excess insurance proceeds and/or such other policies as may
     be applicable to the claims."  *In re Cadet Mfg. Co.*, Order Granting Relief from Injunction to Liquidate
25   Claim, No. 99-30304T (W.D. Wash. Bank. filed Sept. 18, 2002, Dkt. No. 1437).

26   ORDER – 3

determinations regarding attorney fees with a discussion of some or all of the twelve relevant criteria set

forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  These factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*  A court "need not discuss each of the guidelines, so long as it discusses those most relevant to the

particular case." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (citing *Kessler v. Assocs. Fin.*

*Servs. Co.*, 639 F.2d 498 (9th Cir. 1981)).  The *Kerr* analysis is a variation of the lodestar analysis in that

each of the *Kerr* factors is relevant to determining whether the number of hours or the hourly billing rate,

or both, are reasonable in a particular case.  In addition, some of the *Kerr* factors are relevant to the

analysis of whether a multiplier should be applied.

  B.  *Lodestar analysis*

    1.  *Number of hours expended*

  *Kerr* factors (1) (time and labor required), (2) (novelty and difficulty of legal questions), and (8)

(amount involved and results obtained) are relevant to the Court's assessment of the number of hours

expended on this matter.  Cadet's opposition brief highlights the factual and legal difficulties presented by

this case.  This Court has also previously recognized that "the problems of proof . . . were significant."

(Nov. 14, 2003 Order at 5.)  In light of these difficulties, and in light of the Ninth Circuit's ruling that

Plaintiffs are to be considered the "prevailing parties," the Court finds that the number of hours requested

by Plaintiffs are reasonable.

  Cadet argues that Plaintiffs did not properly segregate hours worked on CPA-based claims from

other claims.  *See Travis v. Wash. Horse Breeders Ass'n, Inc.*, 759 P.2d 418, 425 (Wash. 1998)

(applying the general proposition that "attorney fees should be awarded only for those services related to

the causes of action which allow for fees" to a fees award under the CPA) (quoting *Nordstrom, Inc. v.*

ORDER – 4

1 | *Tampourlos*, 733 P.2d 208, 212 (Wash. 1987)).

2 |       It is true that fees awarded under the CPA must be associated with time spent on issues essential

3 | to the CPA claim.  *Id.*  Thus, courts are required to segregate CPA-related fees from non-CPA-related

4 | fees, "[r]egardless of the difficulty in segregation."  *Mayer v. STO Indus., Inc.*, 98 P.3d 116, 123 (Wash.

5 | Ct. App. 2004) (citing *Smith v. Behr Process Corp.*, 54 P.3d 665, 686 (Wash. Ct. App. 2002)).

6 | However, where proof of CPA claims requires "the same preparation" as other non-CPA claims, a court

7 | need not perform a fee segregation.  *Ethridge v. Hwang*, 20 P.3d 958, 966 (Wash. Ct. App. 2001).  In

8 | such cases, the time spent on the "same preparation" is necessarily "essential to the CPA claim."

9 |       Although it is true that "nothing in RCW 19.86 predicates a CPA claim on other causes of action"

10 | (Cadet's Opp'n 16), nothing in the statute *forbids* a CPA claim from resting on proof of an underlying

11 | claim.  Here, Plaintiffs argue that they had to prove the heater was defective in order to prove the

12 | proximate cause element of the CPA claim.  In other words, even though proving the alleged defect was

13 | part of a Product Liability Act ("PLA") claim, it was also an essential part of the CPA claim.  Thus, this is

14 | not a case in which the different legal theories radiate out from a single nucleus of facts and in which time

15 | spent on one legal theory is not relevant to the others, but one in which one legal theory supplies the

16 | foundation for the CPA claim and thus work performed to prove the foundational or elemental theory is

17 | also necessarily work performed in support of the CPA claim.[2]  For this reason, the Court is persuaded

18 | that the intertwined factual and evidentiary nature of the product liability and CPA claims necessarily

19 | means that work performed in the pursuit of the PLA claim was also work performed in the pursuit of the

20 | CPA claim.

21 |       In sum, the Court finds that the number of hours Plaintiffs' counsel spent on this litigation is

22 |

23 |

24 |    [2]Cadet argues that if Plaintiffs' CPA claims had truly been predicated on their PLA claims, they would have failed.  (Cadet's Opp'n 16.)  However, this argument goes to the merits of Plaintiffs' claims

25 | and is relevant to the issue of *whether* fees are awardable, an issue this Court may not revisit under its limited mandate from the Ninth Circuit.

26 | ORDER – 5

1  reasonable.  In addition, the Court finds that all of the work performed was essential to the CPA claim.

2                 2.     *Hourly rates*

3       *Kerr* factors (3) and (9) address the skills required of and possessed by the fee-requesting

4  attorneys, and speak to the reasonability of the billing rate requested.  Cadet objects only to the hourly fee

5  requested by Mr. Marc Rosenberg, which amounts to $300/hour after the application of a multiplier.  Mr.

6  Rosenberg's base rate is $200/hour.  Cadet does not object to the $200/hour rate.[3]

7       Mr. Rosenberg graduated from law school at the end of 2000.  (Supplem. Rosenberg Decl. ¶ 11.)

8  He does not dispute that he became involved in this case less than ten months after being admitted to

9  practice law.  Despite these facts, Mr. Rosenberg appears to have been the lead attorney representing

10  CNA.[4]   In addition, his requested rate of $200/hour is not remarkably larger than the rate requested by

11  an attorney with similar experience, Ms. Shawn Mercalde of Carney Badley Spellman, who bills at a rate

12  of $175/hour.  The small premium charged by Mr. Rosenberg is adequately accounted for by his leading

13  role on the case.  For these reasons, the Court finds that Mr. Rosenberg's requested $200/hour rate is

14  reasonable.

15       Cadet has not objected to the hourly rates charged by any of the other fee-requesting attorneys.

16  As it appears that the rates requested are the attorneys' customary billing rates, the Court finds these

17  rates to be reasonable.  *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983).

18       C.     *Multiplier*

19       Plaintiffs request that their respective lodestar amounts be modified by multipliers which factor in

20  the contingent nature of their fee agreements and the quality of the work performed.  The lodestar

21

22      [3]The authorities cited by Cadet requiring proof of a prevailing market rate involve fee requests in

23  civil rights cases and are thus inapplicable to the case at bar.  In the context of CPA claims, the requesting attorney's usual fee "will likely be a reasonable rate."  *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d

24  193, 203 (Wash. 1983).

25      [4]Although the docket reflects that Mr. Sam B. Franklin is also an attorney of record for CNA, the fees requested relate only to work performed by Mr. Rosenberg.

26  ORDER – 6

1  amount may be modified by the use of a multiplier to take into account factors that might have been left

2  out in the calculation of the applicable hourly fee or the expended hours.  *See Kerr*, 526 F.2d at 70; *see*

3  *also Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).

4        In Washington, courts may consider quality of the work performed, but adjustments on this basis

5  are only justified in rare and exceptional circumstances.  *See Bowers*, 675 P.2d at 204.  Indeed, the

6  *Bowers* court commented that

7            [t]his is an extremely limited basis for adjustment, because in virtually every case the
             quality of work will be reflected in the reasonable hourly rate.  A quality adjustment is
8            appropriate only when the representation is unusually good or bad, *taking into account the
             level of skill normally expected* of an attorney commanding the hourly rate used to
9            compute the "lodestar".

10  *Id.* (citation omitted).

11        Plaintiffs argue that the complexity of the case warrants a multiplier.  However, the Court finds

12  that whatever surplus efforts counsel for the Plaintiffs might have expended have already been taken into

13  account in the number of hours worked.  Moreover, the Court does not find that the "quality" of the

14  filings in this case justifies a multiplier on the basis of "quality of work performed."  Therefore, the Court

15  DENIES Plaintiffs' request to award a multiplier on the basis of quality of work.

16        However, the Court is inclined to award a multiplier on the basis that Plaintiffs' counsel

17  performed their work on a contingency fee basis.  (Rosenberg Decl. ¶ 5F; Pl. Farmers' Mot. at 8;

18  McDowall Decl. ¶ 7.)  Washington courts have embraced the principle that multipliers ought to be

19  awarded in contingency fee cases because "the contingency adjustment is designed . . . to compensate for

20  the possibility . . . that the litigation would be unsuccessful and that no fee would be obtained."  *Bowers*,

21  675 P.2d at 204 (citation omitted).  The *Kerr* factors also consider the contingent nature of work.  *Kerr*,

22  526 F.2d at 70.  There is no evidence that the hourly rates requested by Plaintiffs have already taken the

23  risk factor into account.  In addition, the Court takes note of the evident factual difficulties confronting

24  Plaintiffs from the outset of the case (*i.e.*, a scenario involving extensive fire damage from the largest fire

25  ever faced by the Bellevue Fire Department up to that time).  *See, e.g.*, *Bowers*, 675 P.2d at 204

26  ORDER – 7

(requiring that the "trial court must assess the likelihood of success at the outset of the litigation").  For these reasons, the Court hereby GRANTS Plaintiffs' request for a contingency fee adjustment to the lodestar amount.

Plaintiffs requested a multiplier of 1.5.  Since the Court awards the multiplier only on the basis of the contingent nature of the case (and Plaintiffs requested the additional basis of quality of work), the multiplier to be used is 1.25.

D.     Costs

Defendant contests Plaintiffs' claims for various categories of costs.  Defendant correctly argues that not all litigation expenses are costs eligible to be taxed against the losing party.  28 U.S.C. § 1920 provides a list of costs which may be taxed, including "fees of the clerk and marshal," "fees for printing and witnesses," and transcript-related fees.  It is clear that many of Plaintiffs' claimed "costs" are not § 1920 costs.  However, Plaintiffs' litigation-related costs may be claimed under the rubric of attorneys fees, and not § 1920 costs.  *See Alvarez v. IBP, Inc.*, 2001 U.S. Dist. LEXIS 25341 at *30-41 (E.D. Wash. 2001).  Defendant's objections to Plaintiffs' costs are based on cases where the court was  charged with the task of determining whether the claimed costs are § 1920 costs, and thus do not control this analysis.  This Court follows the example set by its sister court in the Eastern District of Washington and finds that all costs which normally would be billed to a paying client are justifiably included in the computation of reasonable attorney fees.

1. *Photocopying expenses*

Defendant objects to CNA and Design Perfect's requests for photocopying expenses on the basis that they are "bare requests . . . offered without any information on the number of copies, the cost per page nor [sic] the purpose(s) served by the photocopying."  (Dkt. No. 387, Def.'s Consol. Opp'n at 20 (incorporated by reference, see Dkt. No. 424, Opp'n 20-21).)  With respect to CNA's request, Defendant's objection is plainly wrong.  CNA's request states the number of units *and* the price per page ($0.15).  While CNA's request does *not* state the purpose for which each copy was made, the cases cited by Defendant which require this more particularized reporting are addressing reimbursements pursuant to

ORDER – 8

§ 1920. Defendant also objects to the price per page, stating that $0.10 per page is the appropriate amount. The case Defendant relies on for support, *Meacham v. Knolls Atomic Power Laboratory*, 185 F.Supp.2d 193 (N.D.N.Y. 2002) does indeed cite a reasonable cost per page of $0.10. *Id.* at 243-44. The *Meacham* court objected to claimants' declared cost of $0.25 per page because the claimants had not submitted any evidence supporting use of this rate. *Id.* In the absence of this evidence, the court defaulted to a rate found by other New York courts to be reasonable.

Here, while CNA has not submitted any evidence that $0.15 is a reasonable per page rate, $0.15 per page is qualitatively different from $0.25 per page. Moreover, the Court is aware that public users of the Court's own library are charged $0.25 per page. Therefore, the Court finds that $0.15 per page is a reasonable rate.

Design Perfect's request for photocopying expenses does *not* list the number of pages involved, nor does it provide a cost per page. However, Design Perfect's request is itemized in such a way that the Court can verify that each item copied was sufficiently related to the litigation in order to be justifiably included in the computation of reasonable attorney fees. The total amount requested is about 25% less than that requested by CNA. The Court therefore finds that the photocopying expenses requested by Design Perfect are reasonable.

### 2.   *"Unused" deposition expenses*

Defendant objects to Plaintiffs' requests for deposition expenses on the grounds that "[b]ecause there was no trial . . . the depositions went essentially unused." (Dkt. No. 387, Def.'s Consol. Opp'n at 22.) Even if the Court were considering these costs under the rubric of § 1920, the Court has discretion to award costs for things *not* used at trial. *See Wash. State Dep't of Transp v. Wash. Natural Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995). Moreover, the Court recognizes that the utility of depositions extends far beyond use *at* trial. Depositions are often instrumental in shaping trial preparation strategy. Therefore, the Court finds that CNA and Design Perfect are entitled to deposition expenses.

ORDER – 9

3.     *Electronic research expenses*

Electronic research expenses are "properly rejected out of hand" when the inquiry is one determining an award of costs under § 1920. *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 n.2 (9th Cir. 2001). However, under the rubric of reasonable attorney fees, electronic research expenses are a more than reasonable component of such fees. *See Absher Constr. Co. v. Kent School Dist. No. 415*, 917 P.2d 1086, 1090 (Wash. App. Ct. 1995). In the past, attorneys would have spent more time doing research using paper resources and simply logged more hours. These hours would then have been accounted for in the lodestar calculation. Now that electronic resources have streamlined the process, attorneys should not be held responsible for the costs of electronic research simply because the cost is now calculable in terms of lines or pages printed, as opposed to hours. Therefore, the Court FINDS that CNA and Design Perfect are entitled to electronic research expenses.

4.     *Expert witness fees*

Defendant objects to the Plaintiffs' inclusion of expert witness fees in their compensable costs on the grounds that such fees are not allowed under § 1920. This is correct. Generally speaking, costs associated with expert witnesses are not recoverable under federal law. *See Davis v. City and County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992). However, these costs are recoverable under Washington state law in certain circumstances. *See Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Insur. Co.*, 26 P.3d 910 (2001). Our sister court in the Eastern District of Washington has held that where claimants incur expert witness fees in the pursuit of a case involving matters of public policy, recovery of the fees is justified under *Panorama Village*. *Alvarez*, 2001 U.S. Dist. LEXIS 25341 at *33-35.

Here, there are two bases which can be considered to be matters of public policy, the product liability cause of action and the CPA cause of action. Washington's product liability statute, Rev. Code Wash. § 7.72, serves two purposes: 1) to provide individuals with a private right of action against a manufacturer of a product which inflicted harm, and 2) to serve as an additional incentive for manufacturers to exercise reasonable caution with regard to their products. The private right of action

ORDER – 10

conferred in this statute creates a private army of enforcers which enhances the watchdog function of state regulatory bodies. "Failure to reimburse expenses would often eat up whatever benefits the litigation might produce[,] . . . impose a backbreaking burden upon the small, but justified litigants," and disrupt this regulatory scheme. *Panorama Village*, 26 P.3d at 917. Therefore, the Court finds that claimants on causes of action arising out of product liability are entitled to seek expert witness fees.

In the case at bar, since the Court has already found that the product liability claims and the CPA claims are so intertwined so as to render segregation of fees unnecessary, the Court FINDS that CNA and Design Perfect are entitled to recover their expert witness fees as claimed.

### 5.  *Mediators' fees*

The parties agree that this case has been protracted and bitterly fought. The Court encourages parties to a dispute to use alternative dispute resolution procedures whenever possible. *See* Local Rule CR 39.1. Although § 1920 does not contemplate the taxation of mediation fees as part of "costs," mediation fees could still form a component of reasonable attorney fees. Like the other components of reasonable attorney fees addressed above, the Court has discretion over whether mediation fees ought to be awarded in this case. The Court does not here determine whether mediation fees should always be considered a component of reasonable attorney fees, but only whether they should be so considered in this case.

Unlike the other categories of expenses this Court has already considered (*i.e.*, photocopying expenses, electronic research, etc.), there is no clear authority on whether and why mediators' fees should be reimbursed. And unlike the other categories of expenses considered, mediators' fees do not appear to this Court to be an essential element of a pre-trial strategy which ultimately allows one party to prevail over the other party. For these reasons, the Court FINDS that CNA and Design Perfect are not entitled to recover the costs of mediation.

*        *        *        *        *

In accordance with the foregoing, the Court finds that Plaintiff CNA is entitled to costs of

ORDER – 11

$31,273.40 minus $1,315.51 for non-recoverable mediators' fees, for a total costs figure of $29,957.89. Plaintiff Design Perfect is entitled to costs of $25,531.21 minus $1,315.52 for non-recoverable mediators' fees, for a total costs figure of $24,215.69.

     *E.    Fees on appeal*

     CNA's motion for attorneys' fees includes a sum representing fees associated with its appellate work.  However, the Ninth Circuit's mandate to this Court does not indicate that the Court is to consider the matter of attorneys' fees related to the appellate work.  In addition, it appears that the matter of attorneys' fees related to the appellate work is currently being considered by the Ninth Circuit.  *See Nat'l Surety Co. v. Cadet Mfg. Co.*, docket sheet for No. 03-36004, dkt. entries dated Sept. 7, 23, and 29, and Oct. 18 and 27 (9th Cir. filed Dec. 18, 2003).  In the absence of any positive indication that this Court is to make findings regarding attorneys' fees on appeal, the Court declines to address this issue at this time.  *See* 20 James Wm. Moore et al., *Moore's Federal Practice*, § 303.32[1] (Matthew Bender 3d ed. 2005) (explaining that principle of exclusive appellate jurisdiction is a "judge-made doctrine [] designed to promote judicial economy and avoid the confusion and inefficiency that might flow from putting the same issue before two courts at the same time").

## IV.   CONCLUSION

     In accordance with the foregoing, the Court ORDERS that:

     1.     Final judgment be entered against Defendant Cadet Manufacturing Company in favor of CNA Insurance Company in the amount of $264,376.39.  This sum is equal to the $92,316.00 specified by Cadet in its offer of judgment, plus $172,060.39 in costs and fees.  This amount reflects a lodestar multiplier of 1.25 and a reduction of $1,315.51 in non-recoverable mediators' fees.

     2.     Final judgment be entered against Defendant Cadet Manufacturing Company in favor of Farmers Insurance Exchange in the amount of $306,971.88.  This sum is equal to the $145,000.00 specified by Cadet in its offer of judgment, plus $161,971.88 in fees.  This

amount reflects a lodestar multiplier of 1.25.

3.     Final judgment be entered against Defendant Cadet Manufacturing Company in favor of Design Perfect in the amount of $257,178.19.  This sum is equal to the $74,260.00 specified by Cadet in its offer of judgment, plus $182,918.19 in costs and fees.  This amount reflects a lodestar multiplier of 1.25 and a reduction of $1,315.52 in non-recoverable mediators' fees.

SO ORDERED this 1<u>st</u> day of December, 2005.

UNITED STATES DISTRICT JUDGE

ORDER – 13